UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ZIVKO KNEZOVIC, | |
| Plaintiff-Appellant, | Case No. 17-cv-8991 |
| v. | Judge John Robert Blakey |
| URBAN PARTNERSHIP BANK, | |
| Defendant-Appellee. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Zivko Knezovic appeals from the bankruptcy court's grant of summary judgment to Defendant Urban Partnership Bank (UPB) on his adversary complaint, and the court's denial of his motion to alter or amend that judgment. For the reasons explained below, this Court affirms the bankruptcy court's orders.

**I.  Background**

**A.  The Note**

In August 2005, Plaintiff and two co-signers borrowed $1.5 million from ShoreBank. [8-4] at 55. The bank and the borrowers memorialized the loan in a promissory note (the Note) that the borrowers executed when they took out the loan. *Id*. At the same time, the Chicago Title Land Trust Company executed a mortgage in favor of ShoreBank on three properties in Chicago to secure the $1.5 million due under the Note. *Id*.

The Note had a variable interest rate and included the following provisions:

> PAYMENT. Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 360 payments of $9,481.02 . . . .
>
> VARIABLE INTEREST RATE. The interest rate on this Note is subject to change from time to time based on changes in an index which is the ShoreBank's internal commercial lending rate for multi-family dwellings, and in effect 60 (sixty) days before the change date (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans and is set by Lender in its sole discretion. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower . . . . The interest rate change will not occur more often than each two year period. Your rate will change every two years on either the first day of January or the first day of July . . .

*Id.* at 76. The Note also contained an acknowledgement above the signature line that the borrowers "read and understood all the provisions of this note, including the variable interest rate provisions," and agreed to the Note's terms. *Id.* at 78. Plaintiff signed the Note. *Id.*

The initial interest rate on the Note was 6.5%, and from September 2005 through December 2007, the borrowers made monthly payments at that rate. *Id.* at 57. Per the terms of the Note, ShoreBank set its variable interest rate according to the "Index" referenced in the Note, defined as "ShoreBank's internal commercial lending rate for multi-family dwellings." *Id.* at 58. In January 2008, the Index rose to a 7% yearly rate and the borrowers' interest payments on the Note increased to match that rate. *See id.* In January 2010, the Index rose to 7.5% but the interest rate on the Note remained 7%. *Id.*

In August 2010, the FDIC closed ShoreBank and was appointed as its Receiver. *Id.* The FDIC as Receiver (FDIC-R) succeeded to all rights, titles, and

powers of ShoreBank. *Id.*; *see also* 12 U.S.C. § 1821(c)(3)(a). That same month, the FDIC-R endorsed the Note to UPB, assigning all of its interests in the Note and its security (the mortgage taken out by Chicago Title Land Trust Company) to UPB. [8-4] at 59, 79. At that time, UPB received ShoreBank's records, including a historical list of ShoreBank's interest rate indexes, including the Index applicable to the Note. *Id.* at 59. According to an unrebutted declaration submitted by James T. McCartney, UPB's Director of Credit Policy and Risk Management, UPB preserved and maintains the Index along with other records in its internal computer system. *See id.*; [8-5] at 14; [8-15] at 40–42.

According to the Note, the Index is not tied to a national average mortgage rate; instead, UPB sets the Index in its discretion. *See* [8-4] at 59. In October 2010, UPB set the Index at 7%. *Id.* From that point through at least March 2016, UPB did not change the Index. *See id.* at 59–60. During that period, the borrowers made monthly installment payments on their loan at the 7% interest rate. *Id.* at 60. UPB set that rate at least in part because it considers the loan "high risk" as a result of certain features; for example, the loan does not require the borrowers to provide UPB with financial information related to their ability to pay off the loan or to maintain the collateral properties. *See id.* at 60–61.

### B. Bankruptcy Proceedings

In September 2016, Plaintiff filed for Chapter 11 bankruptcy. [8-3] at 6. In December 2016, Plaintiff filed an adversary complaint seeking a determination of the extent of UPB's lien against the collateral properties securing the Note. *Id.* at 2, 6, 8. Plaintiff contended that UPB failed to properly adjust the interest rate on the

3

Note, thus collecting more interest than it should have, which Plaintiff sought to have deducted from the remaining amount he owed under the Note. *See id.* at 13. Specifically, Plaintiff contended that ShoreBank's Index became unavailable when the FDIC closed the bank in 2010—requiring the court to determine a reasonable substitute rate—and that ShoreBank and UPB failed to match the Note's interest rate to prevailing national rates. *See id.* at 10, 11–12.

In August 2017, UPB moved for summary judgment on Plaintiff's adversary complaint on the grounds that UPB charged an appropriate interest rate under the Note. [8-3] at 3; [8-4] at 41. In his response to UPB's motion, Plaintiff argued that: (1) the Index was unavailable from the moment the FDIC closed ShoreBank; (2) that UPB's failure to adjust the interest rates on the Note amounted to a breach of contract and violated the duty of good faith and fair dealing; and (3) that Plaintiff had not waived his right to contest the interest rate by continuing to make payments on the Note. *See* [8-15] at 26, 28, 30. Plaintiff failed to support his first argument with any citations to legal authorities, and cited only to portions of UPB employee depositions demonstrating certain gaps in their knowledge. *Id.* at 26–28. Plaintiff also offered numerous insufficient and improper denials to UPB's statement of facts. *See, e.g.*, [8-15] at 42; *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) (denials must be justified by specific, clear citation to the record).

The bankruptcy court issued a ruling from the bench on October 19, 2017. *See* [8-3] at 3–4; [9]. The court first discussed the terms of the Note and then issued further "uncontested findings," including that ShoreBank left the Note's interest at

4

7% in February 2010 despite raising the Index to 7.5%. [9] at 5–6. The court noted that no evidence suggested that Plaintiff complained that this divergence in the rates represented a breach of contract. *Id*. at 6. Finally, the court noted McCartney's testimony that UPB received the Index along with the rest of ShoreBank's records, and that the Index remained available to UPB throughout the term of the loan. *Id*. at 7.

Based upon the uncontested—"or at least not properly contested"—facts, the bankruptcy court found that the Index remained available to UPB. *Id*. at 7–8. All that Plaintiff offered to rebut McCartney's testimony was the bald assertion that ShoreBank's closing "caused the Index to disappear," an unsupported proposition that the court found "absurd." *Id*. Next, the court rejected Plaintiff's argument that failing to adjust the interest rate on the Note could constitute a breach of contract, since the Note clearly stated that the interest rate was "subject to change," not that it must change. *Id*. at 8. Plaintiff's "unilateral mistake" in believing that the interest rate depended upon national market rates did not void the clear terms of the Note. *Id*. at 10. Having determined that the Index remained available to UPB and that UPB had not violated the terms of the Note, the court did not need to reach the issue of waiver. *Id*. at 12. The court granted summary judgment to UPB. *See id*. at 13; [8-3] at 4. In a final comment, the court acknowledged that Plaintiff failed to "effectively" dispute "most of the facts," but noted that even without that technical default, no evidence disproved the "key fact" that the Index existed and remained available to UPB. [9] at 13.

In November 2017, Plaintiff filed a motion to alter and amend the bankruptcy court's order granting UPB summary judgment and closing the adversary proceeding. *See* [8-2] at 6; [8-15] at 99. In that motion, Plaintiff repeated his argument that ShoreBank's closure made its Index categorically unavailable, this time citing Fifth Circuit precedent in support of his contention. [8-15] at 103. On November 30, the bankruptcy court denied the motion at a hearing. *See* [8-2] at 6; [12] at 26. The court found that Plaintiff offered no controlling precedent and failed to identify a manifest error of law. [12] at 24–25. The court also noted that the posture and facts of the Fifth Circuit cases that Plaintiff cited differed from those in this case. *Id.* at 25.

Following that denial, Plaintiff appealed both the bankruptcy court's grant of summary judgment and denial of his motion to alter or amend that judgment. [1]. Those two orders present the only issues before this Court. *See* [1, 8].

## II. Legal Standard

This Court has jurisdiction to hear appeals from the rulings of the bankruptcy court under 28 U.S.C. § 158(a). On appeal, this Court reviews the bankruptcy court's legal findings de novo and its factual findings for clear error. *In re Miss.Valley Livestock, Inc.*, 745 F.3d 299, 302 (7th Cir. 2014). The "weight of authority" in the Seventh Circuit also subjects mixed questions of law and fact to clear error review. *Grede v. FCStone, LLC*, 867 F.3d 767, 788 (7th Cir. 2017); *but see Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004) (stating that reviewing courts assess mixed questions of law and fact de novo).

6

This Court reviews the bankruptcy court's grant of summary judgment de novo. *Dick v. Conseco, Inc.*, 458 F.3d 573, 577 (7th Cir. 2006). Federal Rule of Civil Procedure 56 governing summary judgment motions applies to adversary proceedings before the bankruptcy court, *see* Fed. R. Bankr. P. 7056, and the local bankruptcy procedural requirements mirror those of this district's local rules, *compare* L. Bankr. R. 7056-1, 7056-2, *with* L.R. 56.1. Accordingly, the parties must support their statements of facts and responses by citing to specific record materials, *see Malec*, 191 F.R.D. at 584, and summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).

This Court only overturns the bankruptcy court's denial of a motion to reconsider for an abuse of discretion. *See* Fed. R. Bankr. P. 9023 (incorporating Fed. R. Civ. P. 59); *Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996) (Rule 59 motions to alter or amend judgments reviewed for abuse of discretion); *Matter of Busick*, 719 F.2d 922, 925 (7th Cir. 1983) (applying rule to bankruptcy court order). Generally, a court abuses its discretion when it relies upon "an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." *In re KMart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004).

## III. Analysis

Plaintiff's adversary complaint challenged UPB's interest rates on the Note on the grounds that: (1) ShoreBank's Index became unavailable upon its closure, requiring UPB to set a new, reasonable interest rate for the Note; and (2) UPB

7

violated the terms of the Note by failing to appropriately adjust the interest on the Note according to prevailing national rates. [8-3] at 10–13. Those two issues provided the basis for the bankruptcy court's challenged orders and remain the sole focus of this appeal. This Court first addresses those issues and the bankruptcy court's summary judgment ruling before turning to Plaintiff's subsequent motion to alter or amend the judgment.

### A. The Index

Under the terms of the Note, its interest rate was "subject to change from time to time based on changes" to "ShoreBank's internal commercial lending rate for multi-family dwellings"—the Index. [8-4] at 76. If the Index became unavailable, the "Lender" could "designate a substitute index" after notifying the borrowers. *Id*. The nub of Plaintiff's argument, both here and before the bankruptcy court, is that ShoreBank's Index became unavailable automatically when the FDIC closed ShoreBank. *See* [8-15] at 26; [14] at 10–13. That argument fails for multiple reasons.

First, as the bankruptcy court noted, Plaintiff simply possesses no evidence that the Index actually became unavailable at any point. Not surprisingly, Plaintiff offered no evidence to rebut McCartney's testimony that UPB received the records of ShoreBank's commercial lending rate for multi-family dwellings—the technical definition of the Index, according to the Note—along with the other records relevant to the Note when UPB acquired it from the FDIC-R.

Instead of submitting evidence, Plaintiff quarreled with UPB's failure to maintain a written policy for setting interest rates and asserted—without

8

analysis—that the continued existence of the Index demanded the continued existence of ShoreBank. *See* [8-15] at 27–28. Nothing in the Note requires the interest-holder to delineate its method of setting the Index in writing; indeed, it says that the "Lender" sets the Index "in its sole discretion." [8-4] at 76. Nor does the Note require that ShoreBank continually and eternally set the Index regardless of any subsequent transfer of interest.

The Note defines the Index as "ShoreBank's internal commercial lending rate for multi-family dwellings," to be "set by Lender in its sole discretion." *Id.* The unrebutted evidence before the bankruptcy court and this Court shows that UPB acquired ShoreBank's commercial lending rate for multi-family dwellings and maintained that rate in its internal records, occasionally adjusting the rate, as committed to its discretion by the terms of the Note. *See id.* at 58–59. UPB inherited the full rights and powers of the original lender—ShoreBank—through the chain of assignment from ShoreBank to the FDIC-R to UPB. *See id.* at 58–59, 79; 12 U.S.C. § 1821(c)(3)(a); *see also, e.g.*, *Strosberg v. Brauvin Realty Servs., Inc.*, 691 N.E.2d 834, 842 (Ill. App. Ct. 1998) (noting that when the interest in a negotiable instrument is transferred, the assignee "acquires all the rights of his assignor"). That included the ability to set the Index—now in UPB's possession—at its sole discretion. *See* [8-4] at 76. The idea that the Index could not be transferred along with the Note belies common sense and the plain terms of the agreement itself; if merely naming the original lender in a note meant that parties could not assign the powers and interests enshrined in that instrument, basic commercial

9

transactions would collapse. Nor do the terms of the Note require such an absurd result. *See, e.g.*, *Suburban Auto Rebuilders, Inc. v. Associated Tile Dealers Warehouse, Inc.*, 902 N.E.2d 1178, 1190 (Ill. App. Ct. 2009) (noting that courts "construe a contract reasonably to avoid absurd results").

In sum, the undisputed facts show that ShoreBank assigned its interest in the Note to the FDIC-R, which assigned that interest to UPB, which received the Note and all its relevant records—including the Index, which it has maintained ever since. Those undisputed facts include UPB's statements of fact that Plaintiff failed to adequately deny. *See, e.g.*, [8-15] at 42; *Aberman v. Bd. of Ed. of Chi.*, 242 F. Supp. 3d 672, 677 (N.D. Ill. 2017) (deeming statements of fact admitted when denials lacked evidentiary support). On this record, Plaintiff fails to show that the Index ever became "unavailable," which, under the Note, forms a precondition to his requested relief: the substitution of a new interest rate. *See* [8-4] at 76.

The Fifth Circuit precedents that Plaintiff cited on his motion to alter or amend the bankruptcy court's summary judgment order, and presented to this Court on appeal, do not affect this conclusion. First, Plaintiff failed to offer these— or any other precedents—in his response to UPB's motion for summary judgment. Thus, his argument based upon those precedents was not before the bankruptcy court at summary judgment and is waived on appeal from that order. *See e.g.*, *In re Sokolik*, 635 F.3d 261, 268 (7th Cir. 2011) (noting that arguments "never raised in the bankruptcy court" are waived on appeal). Even considering those cases, however, they are neither binding upon this Court nor persuasive.

In *Ginsberg 1985 Real Estate Partnership v. Cadle Company*, the note in question was payable to one bank, with its interest rate tied to the "prime" rate charged by a second bank. 39 F.3d 528, 530 (5th Cir. 1994). Both of those banks failed and the note was transferred to other banks. *Id*. Nothing in that opinion indicated that the parties disputed the unavailability of the failed bank's interest rate, or than any successor in interest acquired that bank's records. *See id*. at 531–33. Such facts obviously differ from the present case: ShoreBank itself initially set the Index, by determining—in its discretion—a commercial lending rate for multi-family dwellings. *See* [8-4] at 76. When UPB inherited ShoreBank's interest and records, it became the "Lender" and set the Index—which it now possessed—in its discretion. These facts contrast sharply with note drafted by the parties in *Ginsberg*, which pegged the interest rate to a rate set by a third party that never interacted with the note's interest holders. Once that third party ceased to exist, none of the parties to the note claimed to possess any interest in or information on that party's rate.

In *FDIC v. Blanton*, the district court apparently found—after a trial—that the parties agreed to a particular substitute rate when the original rate identified in the note became unavailable. *See* 918 F.2d 524, 533–34 (5th Cir. 1990). True, the rate specified in the note was that of a failed bank, and the parties and the court treated that rate as having "evaporated." *See id*. at 533. But as in *Ginsberg*, the opinion does not indicate that the failed bank's records survived its closure, that any party in interest held those records, that the relevant rate was committed to

11

the discretion of the lender, or any other facts that would place that case on par with this one. Neither *Ginsberg* nor *Blanton* actually address the issue of what makes a particular interest rate "unavailable"; in both cases, the parties apparently agreed that the relevant rate no longer existed, so the court had no occasion to elaborate upon a standard for unavailability or even delve into the facts relevant to that issue. *See id*. at 533–34; *Ginsberg*, 39 F.3d at 531–33. The other Fifth Circuit cases noted by Plaintiff are similar, and likewise fail to persuade this Court that ShoreBank's closure mandates finding that the Index ceased to exist.

In sum, Plaintiff failed to produce any evidence or argument contradicting UPB's evidence showing that the Index remained available to it. This Court affirms the bankruptcy court's grant of summary judgment to UPB on that issue.

**B. Breach of Contract**

Plaintiff next contended that UPB breached the terms of the Note by failing to change the variable interest rate every two years. [8-3] at 10–11. The bankruptcy court also granted UPB summary judgment on that issue, because UPB had the right to refrain from adjusting the variable interest rate, and in any event, the proper remedy would be damages, not reformation of the terms of the Note. *See* [9] at 8.

On appeal, Plaintiff does not argue that UPB's failure to adjust the interest rate violated the express terms of the Note,[1] but rather that UPB's conduct violates

---

[1] Nor could he because, as discussed, the lender sets the rate in its sole discretion, and, as the bankruptcy court noted, the Note only indicates that changes in the interest rate "will not occur *more often*" than every two years, not that the rate *must* change every two years. *See* [8-4] at 76 (emphasis added).

12

the general duty of good faith and fair dealing. [14] at 16–17. Specifically, Plaintiff contends that UPB violated its duty by: (1) failing to consider the Index unavailable; and (2) setting the Note's interest rate on an ad hoc basis. *See id.*

The duty of good faith and fair dealing requires that a "party vested with contractual discretion must exercise that discretion reasonably, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Cont'l Mobile Tel. Co., Inc. v. Chi. SMSA Ltd. P'ship*, 587 N.E.2d 1169, 1174 (Ill. App. Ct. 1992). This Court has already found that the Index remained available; UPB's similar determination is not unreasonable.

Plaintiff's second contention also fails because he does not support it with relevant evidence. Plaintiff argues that, because two of UPB's employees acted swiftly and occasionally unilaterally in deciding to maintain the 7% interest rate, they must have acted arbitrarily. [14] at 16–17. These actions do not prove that UPB acted arbitrarily, given that the record includes the factors that UPB considered when setting the rate. *See, e.g.*, [8-5] at 15. Moreover, the fact that the Note commits the interest rate to the lender's sole discretion compels the conclusion that the parties knew UPB could decline to adjust its interest rate at any time, "thereby negating any inference that defendant's actions were outside the contemplation of the parties and could be characterized as a breach of good faith." *Cont'l Mobile Tel. Co.*, 587 N.E.2d at 1174. This Court affirms the bankruptcy court's grant of summary judgment to UPB on the issue of the alleged breach of contract or the duty of good faith and fair dealing.

13

C.  Motion to Alter or Amend Judgment

Finally, this Court affirms the bankruptcy court's denial of Plaintiff's motion to alter or amend its grant of summary judgment. First, as the bankruptcy court noted, Plaintiff failed to meet—or even address—the standard set by the applicable federal rule. *See* [12] at 24; [8-15] at 99–108. Federal Rule of Civil Procedure 59(e)—applicable to the bankruptcy courts through Federal Bankruptcy Rule of Procedure 9023—allows courts to alter or amend judgments only if the moving party "can demonstrate a manifest error of law or present newly discovered evidence." *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008).

Here, Plaintiff failed to offer new evidence, so his motion depends upon finding a manifest error of law in the bankruptcy court's grant of summary judgment. *Id.* To succeed, Plaintiff must "clearly establish" that the bankruptcy court disregarded, misapplied, or failed to recognize "controlling precedent." *Anderson v. Holy See*, 934 F. Supp. 2d 954, 958 (N.D. Ill. 2013) (internal quotation marks omitted) (citing *Oto v. Metro. Life Ins.*, 224 F.3d 601, 606 (7th Cir. 2000); *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006)).

Plaintiff's motion to alter or amend the judgment challenged only the bankruptcy court's decision on the availability of the Index and did not address his breach of contract claim or the duty of good faith and fair dealing. *See* [8-15] at 99–108. As to the Index, Plaintiff offered only Fifth Circuit cases—those discussed above and two similar lower court decisions. *See id.* at 103. As the bankruptcy court noted, none of those cases are controlling in this circuit. [12] at 24. Accordingly, Plaintiff failed to clearly establish that the bankruptcy court

disregarded, misapplied, or failed to recognize controlling precedent, and the bankruptcy court properly denied the motion.

Even reaching the merits, the arguments Plaintiff raised in his motion to alter or amend mirror those he raises on appeal, which this Court has already rejected. This Court affirms the bankruptcy court's denial of Plaintiff's motion to alter or amend the judgment.

## IV. Conclusion

For the reasons explained above, this Court affirms the bankruptcy court's grant of summary judgment to UPB. This Court also affirms the bankruptcy court's denial of Plaintiff's motion to alter or amend that judgment. Civil case terminated.

Dated: June 18, 2018

Entered:

_____
John Robert Blakey
United States District Judge